## A00A0217. BRINSON v. THE STATE.
### (537 SE2d 370)

MILLER, Judge.

A jury rejected Kelvin Brinson's coercion defense and found him guilty of robbery by intimidation and kidnapping, as a lesser included offense to armed robbery, while acquitting him of separate charges of armed robbery and kidnapping. On appeal, his sole enumeration of error urges the general grounds. We affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient.[1]

Viewed in such light, the evidence shows that Brinson entered a

---

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Aleman v. State,* 227 Ga. App. 607 (1) (489 SE2d 867) (1997).

Miami Subs restaurant around 9:45 a.m. on a Sunday, under the pretense of desiring to fill out a job application. After returning the application to the manager, Brinson pulled out a firearm and forced the manager and two employees to the back of the store where, at Brinson's demand, the manager removed money from the safe and put it in a bag. After forcing the three into the restaurant's cooler and walk-in freezer, Brinson exited the restaurant with approximately $2,500.

Brinson argues that the evidence was insufficient to sustain his convictions because he presented evidence of coercion. Under OCGA § 16-3-26, a person cannot be guilty of any crime except murder "if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury."[2] "The danger must not be one of future violence, but of present and immediate violence, at the time of the commission of the forbidden act."[3] Coercion is an affirmative defense, and the burden rests with the State to disprove coercion beyond a reasonable doubt.[4]

Brinson testified that Dwight Arnold was upset with him because Brinson had sex with Arnold's stepdaughter. Pulling a gun, Arnold made Brinson ride with him, and the two drove to Miami Subs. Arnold gave Brinson another gun, unloaded, and told him to pretend that he was "Randy," go into the restaurant to fill out a job application, and then rob the store. Brinson also testified that Arnold warned him that if he did not return in five or ten minutes, Arnold would go "straight to [Brinson's] house," where Brinson knew "what's gonna happen." That is, Arnold would " 'F' [him] up." Arnold also mentioned that he knew who Brinson's mother was and where she lived.[5]

To disprove Brinson's coercion defense, the State offered the testimony of Arnold's mother who stated that Brinson and Arnold knew each other and that while Arnold was incarcerated prior to this incident, she would call Brinson and, staying on the line, connect the two on the phone. She explained that in none of the five to ten conversations did she hear Arnold ever threaten or intimidate Brinson. Also, the victims did not see a car or anyone waiting for Brinson, nor did

---

[2] OCGA § 16-3-26; see *Graham v. State*, 239 Ga. App. 429, 431 (1) (b) (521 SE2d 249) (1999).

[3] *Burns v. State*, 89 Ga. 527, 528, hn. 5 (15 SE 748) (1892).

[4] *Graham*, supra, 239 Ga. App. at 432 (1) (b); *Davis v. State*, 232 Ga. App. 882, 883 (1) (502 SE2d 779) (1998).

[5] We do not decide whether the defense of coercion is available where the defendant reasonably believed the threat of imminent death or great bodily injury is directed at a close family member in order to compel the defendant to act.

Brinson appear to look for anyone during the robbery.

The State also adduced evidence that Brinson was willing to "take the heat" for Arnold. In a previous investigation of Arnold involving a stolen automobile and a firearm, Brinson, then a tenth grade student, gave the police the improbable statement that he bought the gun from a junkie for $30 and that he bought the car from another junkie for $10 and gave or loaned them to Arnold. Brinson's apparent motive for this could be viewed as friendship rather than fear. Whether the State met its burden of disproving coercion "is solely within the purview of the jury and will not be disturbed by this Court, as it is supported by sufficient evidence."[6] "[A]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[7] Here, the conflicting evidence and antithetical inferences authorized the jury to find, beyond a reasonable doubt, that Brinson in fact was not coerced.

Moreover, "[c]oercion is a defense only if the person coerced has no reasonable way, other than committing the crime, to escape the threat of harm."[8] Even if the jury had believed Brinson's testimony regarding the coercive threats, they still would have been authorized to find that Brinson had ample opportunity to take both himself and his mother out of harm's way.[9] Thus, we affirm the convictions for robbery by intimidation[10] and kidnapping.[11]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED MAY 17, 2000.

*Franklin & Hubbard, Stacy S. Levy,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney,* for appellee.

---

[6] (Citations omitted.) *Graham,* supra, 239 Ga. App. at 432 (1) (b); see *Davis,* supra, 232 Ga. App. at 883-884 (1); *Manning v. State,* 231 Ga. App. 584, 585 (3) (499 SE2d 650) (1998).

[7] (Citation and punctuation omitted.) *Davis,* supra, 232 Ga. App. at 883 (1).

[8] (Citation omitted) *Stitt v. State,* 190 Ga. App. 58, 59 (378 SE2d 168) (1989).

[9] Cf. id.

[10] Under OCGA § 16-8-41 (a),

[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. The offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery.

[11] OCGA § 16-5-40 (a) explains that a "person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."