S05A1512. BURNS v. THE STATE.
(622 SE2d 352)

THOMPSON, Justice.

Frankie Bishop Burns was convicted by a jury of felony murder and aggravated assault in connection with the shooting death of James Gregory Patrick.[1] On appeal from the denial of his motion for new trial, Burns challenges several evidentiary rulings of the trial court. Finding no reversible error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that throughout the day on October 20, 2002, Patrick, a crack cocaine addict, made several cash withdrawals in order to purchase crack. Later that evening Patrick told his wife he was going to buy headache powder. Rather than doing so, however, Patrick drove to Commerce, Georgia, in his blue Mustang GT, where he stole $40 worth of crack from Willie Moon.

On the morning of October 20, Nancy Hancock, the co-defendant, was at her home on Cedar Drive when she received a .380 automatic handgun from Shane Rogers, who was attempting to sell it. That same day, several witnesses spotted Burns on Cedar Drive. Felicia Harris saw Burns attempting to sell a black handgun in the morning. Later that evening, Quentin Harris saw Burns and Hancock together,

---

[1] The crimes took place on October 21, 2001. Burns and co-defendant Nancy Hancock were charged with felony murder and aggravated assault. A joint trial commenced on May 20, 2002 and on May 21, 2002, a jury found Burns guilty as charged and acquitted Hancock of both charges. On the same day, Burns was sentenced to life imprisonment without the possibility of parole on the felony murder conviction pursuant to OCGA § 17-10-7. The aggravated assault conviction was vacated. A motion for new trial raising the general grounds was filed on June 18, 2002 and denied on April 13, 2005. A notice of appeal was filed on May 13, 2005. The case was docketed in this Court on June 2, 2005, and was submitted for decision on briefs on July 25, 2005.

attempting to sell a black handgun; he subsequently saw Burns alone with the gun. Harris and his uncle, Michael Rakestraw, also saw Burns later that night walking down Cedar Drive wearing a trench coat. Shortly thereafter, Rakestraw and Harris saw Patrick's blue Mustang come around the curve of Cedar Drive and watched as Burns waved the car down. Patrick turned his car around and headed back in the direction of Burns, Rakestraw, and Harris. Rakestraw and Harris then heard Burns and Patrick arguing through the open passenger window of the Mustang. Although Patrick slowed the car down, he never came to a complete stop. Burns managed to lean inside the passenger window and demanded Patrick stop the car. Rakestraw and Harris then heard two gunshots. Rakestraw then watched as Burns pulled himself out of the window and ran back toward him through the yard and into the woods yelling, "I believe I shot him."

Patrick's car shut off, the ignition started briefly again, and then rolled to a nearby ditch where it finally stopped. Willie Moon, lying about his identity, called 911 around 11:30 p.m. and told the police there had been an automobile accident. When the police located the vehicle, Patrick was slumped over in the seat, dead, having sustained one gunshot wound to his right side. In the vehicle, the police found .380 caliber shell casings, a soft drink can that had been used to smoke crack, several ATM and Wal-Mart receipts, and a two-tone gray button on the passenger floorboard.

Rakestraw and Harris did not immediately cooperate with the police because they did not want to get involved, but later cooperated. When police interviewed Hancock the afternoon following the murder, she told them the .380 handgun originally had four bullets in it when she received it from Rogers, but when it was returned to her, only two bullets remained. She told the police that she had disposed of the gun but would not tell them where. Hancock allowed the police to search her residence where they found a trench coat with several buttons missing; the buttons remaining on the trench coat had identical physical measurements and wear characteristics to the one found in Patrick's vehicle. The murder weapon was never recovered.

1. Burns challenges the sufficiency of the evidence to support his convictions under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We find that the evidence, although largely circumstantial, was sufficient to authorize a rational trier of fact to find Burns guilty beyond a reasonable doubt.

The jury was authorized to credit the testimony of Rakestraw and Harris that they saw Burns walking down the street wearing a trench coat and then watched Burns wave down Patrick's car; argue with Patrick; lean in through his open passenger window; and run away after firing two gunshots saying, "I believe I shot him." The

forensic evidence regarding the manner of death was consistent with this testimony. Additionally, Burns was seen with Hancock attempting to sell a black handgun earlier that day; a trench coat with missing buttons was found at Hancock's residence; and the buttons remaining on the trench coat matched a button found on the floorboard of Patrick's vehicle.

Burns contends that the witnesses against him had ample motives to fabricate their testimony and were not credible. However, these witnesses were subject to a sifting and thorough cross-examination by the defense and thus, determining the credibility of their testimony was solely within the province of the jury. *Jaxo v. State*, 272 Ga. 355, 356 (528 SE2d 807) (2000).

2. Burns asserts that the trial court erred in allowing the testimony of Terry Cooper, the crime scene investigator, as it involved improper speculation and invaded the province of the jury. Over objection, Cooper was permitted to testify that he told investigators "if they could find the jacket or coat or whatever this [button] fit on they could find the person who fired the shot because of where it was located."

We find no error in the admission of this testimony. It was allowable for Cooper to assist the jury by stating his opinion as to what he ascertained the import of the button to be given its location in the vehicle. Cooper's testimony neither mentioned Burns, nor addressed the issue of Burns' guilt. While Cooper was not tendered as an expert, his opinion concerning the button's import was based on procedures he used as an investigator, was informed by his experience and training as a crime scene technician, and was the result of a thorough investigation of the victim's car. See *Coleman v. State*, 257 Ga. 313, 314 (357 SE2d 566) (1987).

3. Over objection, the trial court allowed a police officer to testify as follows with regard to a redacted version of Hancock's statement: "She had the .380 handgun. At that time it had four bullets in it. The .380 handgun had been meant to use to kill an individual named Kenny. When she got the handgun back, it had two bullets left in it. She had gotten rid of the handgun that night or earlier that morning."[2] Hancock did not testify, so Burns was unable to cross-examine her about her statement. Burns asserts that the trial court erred in admitting Hancock's statement in violation of his Sixth Amendment right to confrontation as articulated in *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

---

[2] The statement was redacted by the State to eliminate any reference to Burns and was further changed by the trial judge from "I supplied a .380 caliber handgun . . ." to "I had a .380 caliber handgun."

This Court held in *Hanifa v. State*, 269 Ga. 797, 803-804 (505 SE2d 731) (1998) that

"[a] co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant. The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence, that the defendant was involved does not make the admission of the co-defendant's statement a violation of the Confrontation Clause."

In the instant case, the jury was instructed that Hancock's alleged statement "[was] admissible against the defendant Nancy Hancock only . . . not admissible against anyone else." Additionally, Hancock's statement was redacted so as to eliminate any reference to Burns, and thus, standing alone, did not directly implicate him. It follows that the statement falls outside *Bruton*'s scope because, at most, it became incriminating only when linked with other evidence introduced at trial. See *Richardson v. Marsh*, 481 U. S. 200 (107 SC 1702, 95 LE2d 176) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2005.

*Kathleen J. Anderson, Donna A. Seagraves*, for appellant.
*Timothy G. Madison, District Attorney, James B. Smith, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.