A07A2448. BOWE v. THE STATE.
A07A2449. BAKER v. THE STATE.
(654 SE2d 196)

BLACKBURN, Presiding Judge.

Following a jury trial and the denial of his motion for new trial, Elijah Bowe (in Case No. A07A2448) appeals from a conviction on three counts of armed robbery and one count of burglary, contending that the trial court erred in denying his motion to sever his trial from that of his co-defendant, Donald Baker. Baker (in Case No. A07A2449), following the denial of his motion for new trial, appeals his conviction on five counts of armed robbery and one count of burglary, contending that (1) the evidence was insufficient to convict him, (2) the trial court erred in denying his motion to sever his trial from Bowe's, and (3) the trial court erred in denying his motion to sever offenses. In the interest of judicial economy, we have consolidated our review of these cases. Discerning no reversible error in Case No. A07A2448 (*Bowe v. State*), we affirm, because Bowe was able to fully present his defense without unduly prejudicing Baker. However, in Case No. A07A2449 (*Baker v. State*), we must reverse because the trial court's failure to sever the trials prevented Baker from introducing competent evidence in support of his defense, which defense was antagonistic to Bowe.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Eady v. State.*[1]

So viewed, the evidence shows that on the evening of February 22, 2005, as Michael Brawner drove home from buying cigarettes, he

---

[1] *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).

was blocked in by an unfamiliar car. Two masked men in dark clothes jumped out, one with a shotgun and one with a pistol, and ordered Brawner to the ground. While the man with the shotgun went through Brawner's pockets and took money and identification, the man with the pistol acted as lookout. After threatening and hitting Brawner, the two men noticed an approaching van and fled, taking Brawner's vehicle. Brawner ran to a nearby house where he called police, who eventually found his vehicle, which had been damaged and was missing a wheel, a DVD player, a stereo, and several speakers. After Baker later called police with information about the robbery and identified himself, police recovered most of the missing items from Baker's home and returned them to Brawner.

Also on the night of the Brawner robbery, as Shirley Pittman arrived home from a business dinner, a masked gunman approached her vehicle and ordered her out, threatening to kill her. The gunman was accompanied by two or three others in a white car nearby, who also threatened to kill Pittman. After taking the key to Pittman's vehicle, the gunman drove it away as the white car fled. A tracking device in Pittman's vehicle alerted police as to the vehicle's location, and police returned Pittman's vehicle to her the next day, with her purse, identification, and electronic equipment missing. At trial, Pittman identified Baker in court as the masked gunman.

On March 5, 2005, as Cedric McCune arrived at his house around midnight, a masked man with a shotgun appeared outside of his garage and ordered McCune to the ground, threatening him and stating that he "[felt] like killing somebody tonight." The gunman next emptied McCune's pockets, taking his car keys, cell phone, and cash. The gunman then instructed an accomplice to watch McCune while the gunman attempted to enter McCune's house, which he did when McCune's girlfriend appeared at the door of the house. After the gunman threatened McCune's girlfriend and took her purse, both men fled, taking McCune's car. Based on Baker's subsequent phone call to police, police found McCune's cell phone, keys, and some money in a hotel room occupied by Bowe.

Also in the late evening of March 5, 2005, as Teaya Edwards and her date arrived at her date's condominium, a masked man with a shotgun confronted them in the condominium parking lot. As her date fled inside his condominium and locked the door, Edwards was ordered to the ground, where she surrendered her purse to the gunman. Edwards then attempted to flee and the gunman caught her, placing the gun against her. A white car appeared in the parking lot, and after two occupants told the gunman to hurry up, the gunman joined them and fled in the car. Edwards's date called the police, who responded and, while investigating on the scene, received a radio dispatch (based on an anonymous 911 call by Baker) to investigate a

motel room where they found Bowe and from which they recovered most of Edwards's belongings.

Baker and Bowe were charged with five counts of armed robbery and one count of burglary, and following a jury trial, Baker was convicted on all counts, and Bowe was convicted on three counts of armed robbery and one count of burglary. Both Baker and Bowe moved for a new trial, which motions were denied, giving rise to this appeal.

## Case No. A07A2448

1. In his sole enumeration of error, Bowe contends that the trial court erred in denying his motion to sever his trial from Baker's. Specifically, Bowe argues that allowing the State to admit a portion of a statement made to police by Baker, who, like Bowe, did not testify at trial, violated his Sixth Amendment right to confrontation.[2] We disagree.

> Whether to sever the trials of co-defendants is a matter of discretion with the trial judge, and we will not disturb that discretion unless it has been abused. To be entitled to a severance, the appellant must have made a clear showing of prejudice resulting from joinder of these trials amounting to denial of due process, rather than the mere possibility that a separate trial would improve appellant's chance of acquittal.

(Citations omitted.) *Autry v. State.*[3]

Bowe's contention is based on the rule established in *Crawford v. Washington,*[4] which holds that "before out-of-court testimonial statements may be admitted in a criminal trial, the Confrontation Clause requires that the declarant be unavailable and that the defendant have had a prior opportunity for cross-examination." *Turner v. State.*[5] Because the trial court failed to sever the trials, Bowe argues that certain out-of-court statements (by Baker, who did not testify) admitted against Baker prejudiced Bowe.

---

[2] In his appellate brief, Bowe concedes that because only limited information from Baker's statements was admitted, the evidence did not present an issue with respect to Bowe under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). See *Burns v. State*, 280 Ga. 24, 27 (3) (622 SE2d 352) (2005) (the "statement was redacted so as to eliminate any reference to [the defendant], and thus, standing alone, did not directly implicate him. It follows that the statement falls outside *Bruton*'s scope because, at most, it became incriminating only when linked with other evidence introduced at trial.").

[3] *Autry v. State*, 230 Ga. App. 773, 775 (3) (498 SE2d 304) (1998).

[4] *Crawford v. Washington*, 541 U. S. 36, 68-69 (V) (C) (124 SC 1354, 158 LE2d 177) (2004).

[5] *Turner v. State*, 281 Ga. 647, 650 (3) (b) (641 SE2d 527) (2007).

The first statement at issue is a portion of a printout of a 911 call made by Baker that was read by a police officer as follows: "the complainant had called back and . . . advised that a signal 44 [armed robbery] has been done in the last six days utilizing his vehicle." The State offered this evidence to show that Baker admitted that his vehicle was used in an armed robbery. Bowe objected to the officer's testimony on the grounds that it violated *Crawford* and deprived him of his right to confront witnesses against him; the trial court found that the testimony did not violate *Crawford*.

The out-of-court statement at issue here, that Baker called and said that his vehicle had been used in an armed robbery, does not implicate Bowe. The State offered this evidence to show that Baker was involved, but this statement does not show Bowe's guilt. Thus, because "admission of evidence in violation of *Crawford* will be deemed harmless if there is no reasonable possibility that it contributed to a guilty verdict," *Richard v. State*,[6] we discern no reversible error with respect to this statement. We note that, on cross-examination, Bowe's attorney asked the officer if that phone call directed police to the motel room where Bowe was found and arrested, which the officer answered in the affirmative. However, Bowe cannot now complain of testimony he himself elicited. *Sullens v. State*[7] ("self-induced error is not grounds for reversal").

The next statement Bowe points to as grounds for severance is the following testimony, later elicited by the State from another police officer:

> Q: Did you come in contact with an individual who identified himself to you as Donald Baker?
> A: Yes, ma'am.
>
> *   *   *
>
> Q: Now, when Mr. Baker came to the police department . . . did he give you any information with respect to a phone call that he had made?
> A: Yes, ma'am, he did.
> Q: Now, did he tell you — or were you familiar with a phone call that had been made with respect to the . . . armed robbery [against Edwards]?
> A: Yes, ma'am.

[6] *Richard v. State*, 281 Ga. 401, 404 (1) (637 SE2d 406) (2006).
[7] *Sullens v. State*, 239 Ga. 766, 767 (2) (238 SE2d 864) (1977).

\* \* \*

Q: And it was based on that phone call that the police went to [a motel room] and located some evidence associated with this case?

A: Yes, ma'am.

\* \* \*

Q: All right. Now, when Mr. Baker came to the police department . . . and this is simply yes or no, did he tell you that he was the individual who had made that phone call?

A: Yes, ma'am.

At trial, Bowe did not object to this testimony, and the jury had already heard testimony, also absent any objection, from the police officer who actually went to Bowe's hotel room and found evidence associated from the armed robberies. That Bowe himself was in the hotel room was not part of Baker's excerpted statement, so any incrimination of Bowe himself was due to his presence in the motel room, not due to the statement itself. Further, Bowe's attorney had already elicited that Baker made the 911 call telling police to go to the motel room. Thus, we discern no reversible error.

Next, a police officer testified as follows, with respect to a custodial statement given by Baker:

Q: Now, in giving you his statement . . . did Mr. Baker describe to you an armed robbery that met the description of Mr. McCune and [his girlfriend's] armed robbery?

A: Yes, he did.

Q: Did he tell you whether or not he was present during that armed robbery?

\* \* \*

A: Yes, he stated he was present.

Q: Now, did he also describe to you a second armed robbery on that same night, an armed robbery that met the description of Teaya Edward's armed robbery?

A: Yes.

Q: And did he admit to you that he was present during that armed robbery?

A: Yes, he did.

\* \* \*

> Q: Did you ask Mr. Baker whether or not he had gotten or had asked somebody to get rid of [a Yukon SUV]?
> A: Yes, I did.
> Q: And did he admit to you that he had in fact asked somebody to get rid of the Yukon?
> A: Yes, he did.

Again, this statement was admitted without any objection from Bowe. Moreover, the substance of this statement merely ties Baker to the robberies and does not implicate Bowe. Nevertheless, Bowe argues that because an officer testified that Baker's call caused him to go to a certain motel room where he found Bowe and evidence from some of the robberies, and Baker did not testify, Bowe contends that his Sixth Amendment right was violated. However, the statement that Baker told police to go to the motel room where Bowe was found was first elicited on cross-examination by Bowe, and the other testimony does not implicate Bowe. Accordingly, we discern no reversible error. See *Richard v. State*, supra, 281 Ga. at 404 (1).

## Case No. A07A2449

In Baker's appeal, he contends (1) that the evidence was insufficient to support his conviction, (2) the trial court erred in denying his motion for new trial on the ground that his trial should have been severed from Bowe's, and (3) on the ground that the offenses should have been severed. Because the trial court's failure to separately try the co-defendants prejudiced Baker's defense, we must reverse.

2. Baker contends that the evidence was not sufficient to convict him of the crimes. We disagree.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [the defendant] no longer enjoys a presumption of innocence. When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt.

(Citation, punctuation and footnote omitted.) *Bryant v. State.*[8] See

---

[8] *Bryant v. State*, 286 Ga. App. 493, 493-494 (1) (649 SE2d 597) (2007).

*Jackson v. Virginia.*[9]

Here, Baker was indicted for and found guilty of armed robbery (five counts) and burglary (one count). With respect to the robbery convictions, OCGA § 16-8-41 (a) provides that

> [a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.

With respect to the burglary conviction, OCGA § 16-7-1 (a) provides that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters ... the dwelling house of another...." "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a).

The evidence showed (a) that Baker admitted to being present at the scene of the armed robberies against Edwards and McCune and the burglary of McCune's residence, (b) that Baker admitted his vehicles were used in the commission of at least one armed robbery, (c) that McCune and his girlfriend testified that two men worked together to rob them, (d) that Pittman identified Baker in court as the man who robbed her at gunpoint, (e) that each victim described the robber as working in cooperation with an accomplice, (f) that Baker asked an acquaintance to "move" a black GMC SUV matching the description of Pittman's, (g) that Brawner's stereo equipment was found in Baker's residence, and (h) that each robbery was performed with a shotgun. In light of this evidence, the jury was authorized to find Baker guilty of the charged crimes.

3. Baker contends that the trial court erred in denying his motion to sever his trial from Bowe's, arguing (a) that because they were jointly tried, Baker was not allowed to introduce the exculpatory portions of the statements that explained the excerpted admissions introduced by the State, and (b) that evidence offered in Bowe's defense improperly incriminated Baker. We agree with the former assertion and thus need not reach the latter.

> A defendant seeking severance must show clearly that he will be prejudiced by a joint trial; in the absence of such

---

[9] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

> a showing, the trial court's denial of a motion to sever will not be disturbed. Factors to be considered by the trial court in exercising its discretion are: whether a joint trial will create confusion as to the law and evidence applicable to each defendant; whether there is a danger that evidence admissible against one defendant will be improperly considered against the other, regardless of the court's instructions; and whether the defendants are asserting antagonistic defenses.

(Citation omitted.) *Appling v. State.*[10] An assertion of antagonistic defense alone is not a basis for severance absent a showing of harm. *Rhodes v. State.*[11]

Here, Baker argues that severance was required because of his antagonistic defense, i.e., that he was present at the robberies due to coercion by Bowe. See OCGA § 16-3-26 ("[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury").

At trial, the State introduced portions of statements Baker made to police either in a 911 phone call or in a subsequent custodial statement to police. The initial 911 call included a statement that Baker feared Bowe and was forced to participate in the robberies, and the complete version of Baker's custodial statement accused Bowe of coercing him into being present at the robberies, and alleged that Bowe sold him some of the stolen goods. To avoid potential *Bruton*[12] issues, the State introduced only those portions of the statements establishing that Baker was at the scene of two robberies, that his vehicles were used, that he sought to "move" a GMC Yukon, and that he sent police to a motel room to investigate the robberies (without mentioning Bowe). Baker objected and sought to include the complete statements, which, in relevant part, tended to support Baker's defense that he was coerced into participating in the crimes.

Although the complete statements were properly excluded due to *Bruton* considerations, Baker argues that the "rule of completeness"

---

[10] *Appling v. State*, 281 Ga. 590, 591 (2) (642 SE2d 37) (2007).

[11] *Rhodes v. State*, 279 Ga. 587, 590 (3) (619 SE2d 659) (2005).

[12] *Bruton* holds that

a defendant's Sixth Amendment right of confrontation is violated, despite cautionary instructions, when: (a) co-defendants are tried jointly; (b) one co-defendant's confession is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.

*Mason v. State*, 279 Ga. 636, 638 (2) (b), n. 3 (619 SE2d 621) (2005).

requires that the entire relevant portion of the statements should have been admitted: "[w]hen an admission is given in evidence by *one* party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." OCGA § 24-3-38.

As noted by the trial court, the constitutional considerations of *Bruton* necessitated that the entire admissions be excluded. But for *Bruton*, however, under OCGA § 24-3-38, Baker would have been authorized to introduce, for example, the relevant context of his admission that he was at the scene of two of the armed robberies, i.e., that he was coerced by Bowe. Although the excluded portions of the statement were self-serving hearsay,

> [w]here a part of a conversation, which amounts to an incriminatory admission, is admitted in evidence, it is the right of the accused to bring out other portions of the same conversation, even though it is self-serving in its nature, or exculpatory, in that it justifies, excuses, or mitigates the act.

*West v. State*.[13] Therefore, had the trial been severed, and the *Bruton* issue thereby avoided, Baker would have been able to provide the full context of the admissions offered by the State, in which Baker explained in both the 911 call and his custodial statement that he feared Bowe and was forced to participate in the robberies.

It is true that had the jury heard this evidence and still returned a finding of guilt, the evidence would have supported such a finding, especially since the jury was instructed on party to a crime. *Brinson v. State*[14] ("[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld") (punctuation omitted). However, the evidence linking Baker to each crime was not so overwhelming as to render the failure to sever harmless. Cf. *Collum v. State*[15] ("in some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the [failure to sever] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper [result] was harmless error") (punctuation omitted). Each victim testified that the perpetrators wore masks, except for McCune, who said, "No I didn't see the other guy, period, because I was laying on my stomach." McCune further testified that he was not sure if the perpetrator in the garage (where Baker

---

[13] *West v. State*, 200 Ga. 566, 569 (37 SE2d 799) (1946).
[14] *Brinson v. State*, 244 Ga. App. 40, 42 (537 SE2d 370) (2000).
[15] *Collum v. State*, 281 Ga. 719, 721-722 (2) (642 SE2d 640) (2007).

admitted to being) had a gun and that the perpetrator in the garage called to the gunman in the house, saying, "you're taking this too far" and that the perpetrator in the garage "could have been forced."

Because *Bruton* required that the evidence supporting Baker's antagonistic defense be excluded, and in light of the lack of overwhelming evidence of Baker's guilt, we hold that the trial court's denial of Baker's motion to sever was harmful error requiring a reversal of Baker's convictions.

4. Because it may arise on retrial, we address Baker's contention that the trial court abused its discretion in failing to sever the offenses; we find no such abuse.

> On appellate review, when [as here] joinder is based on the same conduct or on a series of acts connected together and evincing ongoing criminality, severance lies within the sound discretion of the trial court. A ruling on a motion to sever offenses will therefore be affirmed unless the trial court abused its discretion. In exercising its discretion, the trial court must consider whether the trier of fact can distinguish the evidence and apply the law intelligently as to each offense, given the number of offenses charged and the complexity of the evidence.

(Punctuation and footnote omitted.) *Johnson v. State.*[16]

Here, Baker argues that the evidence was stronger against Bowe for the first two robberies, i.e., the Brawner and Pittman robberies, and that in trying the offenses together with the others, the spillover of evidence prejudiced Baker. However, Pittman identified Baker in court as one of the masked gunmen, and Brawner's stereo equipment was found in Baker's residence. Moreover, each of the robberies was performed at night by two masked men, with consistent physical descriptions at each robbery, with a shotgun, in the same general area, within days of each other. Under these circumstances, we find no abuse of discretion by the trial court in not severing the offenses. See *Johnson v. State*, supra, 276 Ga. App. at 507 (2) ("[t]he offenses were properly joined because they constituted a series of criminal acts closely connected by geography, time, and manner so as to constitute a scheme or plan of criminal conduct") (punctuation omitted).

Baker's remaining enumerations are moot.

*Judgment affirmed in Case No. A07A2448. Judgment reversed in Case No. A07A2449. Ruffin and Bernes, JJ., concur.*

---

[16] *Johnson v. State*, 276 Ga. App. 505, 507 (2) (623 SE2d 706) (2005).

DECIDED NOVEMBER 9, 2007 —

*Carl P. Greenberg*, for appellant (case no. A07A2448).
*Robert H. Citronberg*, for appellant (case no. A07A2449).
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.