A10A1737. BAKER v. THE STATE.
(706 SE2d 214)

SMITH, Presiding Judge.

A jury found Donald Baker guilty on two counts of armed robbery and one count of theft by receiving stolen property.[1] Following the denial of his motion for new trial, Baker appeals, arguing that the evidence was insufficient to sustain his conviction, that the trial court erred in allowing improper character evidence, and that he received ineffective assistance of counsel. Having reviewed these claims, we affirm.

Construing the evidence presented in Baker's second trial in

---

[1] This appeal is from Baker's second trial. We reversed his convictions following his first trial on the ground that the trial court erred in denying his motion to sever his case from that of his then co-defendant Elijah Bowe. *Bowe v. State*, 288 Ga. App. 376 (654 SE2d 196) (2007).

favor of the verdict,[2] the record reveals that on February 23, 2005, as Michael Brawner stopped at a stop sign, an unfamiliar white car that had been following him pulled around and blocked him in. The car had a colorful Kentucky vehicle tag. A masked man jumped out of the car with a shotgun, ordered Brawner to the ground, and told him "don't look." A second man got out of the car and ordered Brawner to get in the trunk of the car. The two men took Brawner's money and identification. When a van approached, the men fled, taking Brawner's car. Brawner ran to a nearby house where he called police, who eventually found his car, which had been damaged and was missing a wheel, a CD player, a DVD player, a stereo, and several speakers.

On the same night that Brawner was robbed, Shirley Pittman arrived home from a business dinner. A masked gunman approached her SUV and ordered her out, threatening to kill her. After taking Pittman's keys, the gunman ordered Pittman to the ground and drove away in her SUV. As the gunman drove away, a second man waiting in a white car told Pittman "if you look, we're going to kill you." A tracking device in Pittman's SUV alerted police as to its location, and they returned it to Pittman the next day. At trial, Pittman identified Baker in court as the masked gunman. She testified that she could see the gunman's eyes and mouth during the robbery.

On March 5, 2005, as Cedric McCune pulled inside his garage, a masked man with a shotgun appeared and ordered McCune to the ground and threatened that he [was] "fixing to kill somebody tonight." The gunman took McCune's car keys, cell phone, and cash. The gunman then instructed a second man to watch McCune while the gunman attempted to enter McCune's home. When McCune's fiancée appeared at the door of the home, the gunman threatened her and took her purse. Both men fled, taking McCune's car.

Also on March 5, 2005, in the late evening, as Teaya Edwards and her friend arrived at her friend's condominium, a masked man with a shotgun confronted them in the parking lot. The gunman ordered Edwards to open the door of the condominium, and when she informed him that she did not have the keys, the gunman chased Edwards around her friend's vehicle. The gunman then ordered Edwards to the ground and said "you know what I want." Edwards threw her purse and the gunman picked it up and "started going through it." He then told her to "count to ten and not look up." Other men in a white Chevrolet Impala yelled to the gunman to

---

[2] We note that the facts presented in Baker's second trial are nearly identical to the facts presented during his first trial. See id.

"come on, let's go." The gunman then left in the Impala. Edwards called the police, who responded and, while investigating on the scene, received a radio dispatch to investigate a motel room where they found Bowe and from which they recovered most of the victims' belongings. Officers also found a shotgun in the motel room.

The tip that officers received to investigate the motel room following the armed robbery of Edwards came from a call Baker made to police. Baker told officers that Bowe had just committed an armed robbery and that he and his family were afraid of Bowe. Upon learning that Baker may have also been involved in the robberies, police obtained a search warrant and executed a search of Baker's home where they discovered several items belonging to the victims. Officers also discovered a white Chevrolet Impala registered to Baker and a blue Chevrolet Malibu with a colorful Kentucky vehicle tag that belonged to Baker's girlfriend. Baker gave a statement to police claiming that he was forced by Bowe to drive around and participate in the robberies, and also gave similar testimony at trial.

1. Baker first argues that the State elicited improper character evidence from him during cross-examination. During trial, the State sought to admit a photograph of Baker wearing braids in his hair based on the testimony from one of the victims who stated that the armed robbery perpetrator wore braids. When the State attempted to admit the photograph, defense counsel objected that the State had not laid a proper foundation for admission of the photograph and that "it does not tell when that accurately depicts what he looked like." When the trial court suggested to the State "[w]ell, why don't you ask him," the following colloquy took place:

> [The State:] When do you presume that photograph was taken?
> [Baker:] When? Well, for sure I can assure you that it was before — I know for a fact it was before 2004.
> [The State:] Okay. When?
> [Baker:] It had to be 2004.
> [The State:] Okay. Where?
> [Baker:] I can explain why I know that.
> [The State:] Explain.
> [Baker:] 2004 I went through diagnostic in the Federal penitentiary over here in Atlanta and your hair is cut off. There is no way possible that I could have braids after 2004 because I came home in 2005.

The State moved to admit the photograph, and when defense counsel again objected, the State responded: "I'll withdraw it." The State

then continued its cross-examination of Baker. The prosecutor asked Baker: "You were in the penitentiary you say?" and continued to ask Baker questions concerning his statement. Baker revealed that he was referring to a probation violation of a federal sentence from a conviction for the sale of cocaine in Kentucky. Defense counsel made no objections during this colloquy and only objected later during Baker's testimony when the State commented: "You've conducted activities in the street. We know you have a drug conviction." The court sustained defense counsel's objection that the statement was "calling for character evidence."

There is nothing to show that the question posed by the State here — asking Baker to explain why he knew when the photograph was taken — was intended to elicit the response Baker gave concerning his prior incarceration. See *Thomas v. State*, 270 Ga. App. 181, 183-184 (3) (606 SE2d 275) (2004). And

> [w]here the defendant testifies and admits prior criminal conduct, he has not placed his character "in issue" within the meaning of OCGA § 24-9-20 (b). Rather, he has raised an issue which may be fully explored by the State on cross-examination. It was appellant . . . who introduced the topic. He cannot now complain that the prosecutor followed up on cross-examination.

(Citations and punctuation omitted.) *Cobb v. State*, 251 Ga. App. 697, 698 (555 SE2d 79) (2001); see *Mitchell v. State*, 193 Ga. App. 214, 215-216 (2) (387 SE2d 425) (1989). Although Baker argues that there was no determination by the trial court concerning the relevance of this testimony, defense counsel made no objection during the testimony, objecting only when the State commented that Baker had a drug conviction, and did not move the court for a ruling on relevance. See, e.g., *Rupert v. State*, 239 Ga. App. 128, 130-131 (1) (a) (520 SE2d 695) (1999) (any error waived where belated objection to question based on character was not made until after evidence had been admitted without objection). This claim of error is without merit.

2. Baker contends counsel was ineffective for failing to object to the State's follow-up questions concerning Baker's prior incarceration, and for failing to move for a mistrial following counsel's objection to the State's comment that Baker "conducted activities in the street." To show ineffective assistance of counsel, a defendant must show that his trial counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this

court upholds the trial court's factual findings unless they are clearly erroneous." (Citation, punctuation and footnote omitted.) *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004). "Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim." (Citation and punctuation omitted.) *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006).

Baker argues that trial counsel was ineffective in failing to object to the evidence of his prior incarceration. But as we have held in Division 1, the State could properly cross-examine him on the issue because Baker opened the door to this evidence. Therefore, trial counsel's failure to object in this circumstance cannot be ineffective assistance. See *Taylor v. State*, 264 Ga. App. 665, 669-671 (5), (7) (592 SE2d 148) (2003). Baker also complains that trial counsel was deficient for failing to move for a mistrial following the State's comment that Baker "conducted activities in the street." The trial court sustained trial counsel's objection to the comment. But even assuming trial counsel's failure to move for a mistrial was deficient here, Baker has not shown that a mistrial would have been granted had counsel done so. See, e.g., *Leon v. State*, 237 Ga. App. 99, 106 (4) (c) (513 SE2d 227) (1999).

3. Finally, Baker contends that the evidence was insufficient to sustain his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

The evidence presented here showed that (a) Baker admitted to being present at the scene of the armed robberies, (b) Pittman identified him in court as the man who robbed her at gunpoint, (c) several items belonging to the victims were found in Baker's home, (d) Baker and his girlfriend owned vehicles similar to those used in the robberies, and (e) each victim testified that the robber worked in cooperation with an accomplice. This evidence was sufficient to sustain Baker's conviction for theft by receiving stolen property and two counts of armed robbery under the standard of *Jackson*, supra. See OCGA §§ 16-8-41 (a), 16-8-7 (a); *Lawrence v. State*, 305 Ga. App. 199, 200 (1) (699 SE2d 406) (2010); *Bowe*, supra, 288 Ga. App. at 382 (2).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 16, 2011 — ■

*Robert H. Citronberg*, for appellant.

*Gwendolyn Keyes Fleming*, District Attorney, *Leonora Grant*, Assistant District Attorney, for appellee.