**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 12, 2014**

# In the Court of Appeals of Georgia

A13A1933. CARTER v. THE STATE.

A13A2328. ALFORD v. THE STATE.

RAY, Judge.

After a jury trial in which they were tried as co-defendants, Antonio Carter and Demario Alford were each convicted of one count of armed robbery (OCGA § 16-8-41).[1] In Case No. A13A2328, Alford appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his conviction, that the trial court erred in denying his motion for a mistrial, and that the trial court erred in allowing testimony identifying him in a surveillance video into evidence. In Case No. A13A1933, Carter appeals from the denial of his amended motion for new trial,

---

[1] Brandon Phillips was also indicted for the same incident and pled guilty to robbery.

arguing that the trial court erred in refusing to strike several jurors and in allowing testimony identifying him in a surveillance video into evidence. Carter also argues that he received ineffective assistance of counsel. For the reasons that follow, we affirm Alford's conviction, reverse Carter's conviction, and remand for a new trial for Carter.

*Case No. A13A2328*

1. Alford argues that the evidence presented at trial was insufficient to support his conviction. We disagree.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. This same standard applies to our review of the trial court's denial of [the defendants'] motion[s] for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719, 719 (545 SE2d 325) (2001).

2

So viewed, the record shows that at 6:30 p.m., on October 17, 2011, Thrift Town, a grocery store in Newnan, was robbed at gun point by two African-American males. A third male, Brandon Phillips, was also indicted for the crime, and he testified that his role in the robbery was to go into the store and determine who was inside. The men stole approximately eight to nine thousand dollars from the store's cash registers.

Approximately an hour before the robbery, the two co-defendants came into the store, as can be seen and identified on the store's video surveillance cameras. Significantly, the first video shows the clothing worn by the co-defendants. Alford wore a checkered hat, light blue jeans, and a red belt, and Carter wore a red hat with a black brim. A review of the store's surveillance video of the robbery an hour later shows that although Alford had changed into a yellow jacket and concealed his face during the robbery, he was still wearing light blue jeans, a checkered hat, and the distinctive red belt. Although Carter concealed his face and put on a black jacket during the robbery, he was still seen wearing a red hat with a black brim.

Although neither the store owner nor the employee who was at the store at the time of the robbery could positively identify Alford or Carter, at trial the employee positively identified Phillips as one of the men hanging around the robbers before and

3

after the robbery. Phillips testified that Alford and Carter were the two other people involved in the robbery. Phillips' description of the clothing worn by Alford and Carter before and during the robbery was consistent with that shown in the surveillance tape, including the fact that Alford was seen wearing blue jeans and a red belt and that Carter was wearing a red hat with a black brim.

Bridgette Smith, who was living with Phillips' brother, testified that Alford and Carter ran through the back of her house shortly after the robbery. Cynthia Royal testified that she saw Alford and Carter come out of Smith's house and throw their clothes into the trash. Detective Greg Vansant testified that the clothing later recovered by law enforcement near Smith's house was the same clothing depicted on the videos, including the yellow jacket and red belt worn by Alford and the red hat worn by Carter. Additionally, Alford's cell phone records place him in the area of the robbery at the time of the robbery occurred, even though Alford claimed to have been in Atlanta at that time.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Alford guilty beyond a reasonable doubt of armed robbery. OCGA § 16-8-41. "It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or

4

inconsistencies in the evidence." (Citation and punctuation omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).

2. During cross-examination by Alford's trial counsel, Norrissa Phillips, who is Phillips' sister, testified that she heard Alford state that he and Carter had robbed the store alone and that Phillips had not been involved with the robbery. Carter's trial counsel then moved for mistrial, arguing that the statement constituted a *Bruton* violation because it implicated his client.[2] Alford's counsel then joined the motion for mistrial, arguing that because Alford had to craft his questions so as not to elicit testimony that would violate *Bruton*, he was denied the right to a thorough and sifting cross-examination of the witness. Alford contends that the trial court's denial of his motion for mistrial was in error.

The trial court denied the motions for mistrial, but it allowed counsel for both defendants and the State to craft a curative instruction and a stipulation as to what Norrissa Phillips' further testimony would be. The trial court then instructed the jury

---

[2] Under *Bruton v. United States*, the admission of a co-defendant's confession that implicated another defendant at a joint trial constitutes prejudicial error even though the trial court gave clear, concise, and understandable instructions that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant. *Davis v. State*, 261 Ga. 382, 383 (3) (a) (405 SE2d 648) (1991) (citing *Bruton v. United States*, 391 U. S. 123 (88 S. Ct. 1620, 20 LE2d 476) (1968)).

5

according to the agreed-upon instruction and stipulation, which included a statement that Norrissa Phillips heard Alford state that Phillip had left the store prior to the robbery. Alford's trial counsel agreed to the stipulation and did not object to the curative instruction either before or after it was given.

Relying upon *Bowe v. State*, 288 Ga. App. 376 (654 SE2d 196) (2007), Alford urges that the trial court erred in denying his mistrial because a "thorough[ ] and sifting cross-examination of Norrissa Phillips was limited because of the *Bruton* issue and [Alford] was force[d] to settle for a stipulation of facts instead of a complete cross-examination." In *Bowe*, this Court held that the trial court erred in denying a defendant's motion to sever his trial from that of a co-defendant when *Bruton* concerns prevented him from introducing complete transcripts of 911 phone calls and a subsequent custodial statement he made to the police regarding his only antagonistic defense, i. e., that he was present at the robberies solely because of coercion by his co-defendant. Id. at 383-384 (3). Unlike in *Bowe*, however, Alford did not move to sever his trial from Carter's, and he was not prevented from introducing evidence supporting an antagonistic defense at trial. Rather, at trial, he argued that because of *Bruton* concerns, he was prevented from providing the full context of

6

Norrissa Phillips' statement – that is, that Alford did not believe Phillips was involved in the crime because he had left the store prior to the robbery.

However, even if it was error to exclude Norrissa Phillip's testimony in its entirety, such error does not require a reversal of Alford's convictions because "evidence similar to that [Alford] sought to introduce through his cross-examination of Norrissa Phillips was admitted at trial through the stipulation and through the testimony of another witness." *Mitchell v. State*, 293 Ga. 1, 2 (1) (742 SE2d 454) (2013). The stipulation stated that the witness told police that Alford claimed Phillips had nothing to do with the robbery and left the store prior to the robbery. Phillips himself testified that he left the store prior to the robbery taking place. Further, a store employee testified that he recognized Phillips as one of the men in the store during the evening of the robbery, but only stated that he saw him standing outside the door of the store with the other two co-defendants immediately after the robbery. See id. (reversal not required when trial court required defendant's statements to police to be redacted to comply with *Bruton* when such redacted portions of the statement sought to be admitted were cumulative of evidence presented through the testimony of another witness). Because the evidence Alford sought to be admitted through Norrissa Phillip's cross-examination would have been cumulative of other testimony admitted

at trial (including the stipulation as to her what the remainder of her testimony would have been), we find it highly probable that the exclusion of such testimony did not affect the outcome of the proceedings. Id.

3. Alford contends that the trial court erred in allowing Detective Vansant, the State's witness, to identify him on the store's surveillance videotape of the robbery. We agree that this was error by the trial court, but find it harmless in the context of all the other evidence introduced at trial.

During the course of the trial, after viewing the surveillance videos and after Detective Vansant gave his initial testimony, a juror sent a note to the trial court inquiring if the trial court would identify the individuals shown in the surveillance videos. The trial court then instructed the jury that "a witness is not permitted to identify a person in a photograph or a video other [than] himself or herself. Rather, identity is an ultimate question of fact to be determined by the jury." After this instruction, Detective Vansant was then allowed to testify for a second time regarding the surveillance videos. This testimony included, over Alford's objection, that one of the perpetrators was Alford.

It is well established in our case law that it is improper to allow a witness to "testify as to the identity of a person in a video or photograph when such opinion

8

evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions." (Citation and punctuation omitted.) *Dawson v. State*, 283 Ga. 315, 320 (4) (658 SE2d 755) (2008). Indeed, such identification testimony

> should be admitted for the jury's consideration *only* if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video or] photograph than is the jury, as when the witness is familiar with the defendant's appearance around the time a surveillance [video or] photograph was taken and the defendant's appearance has changed prior to trial, or when the witness knows about some other distinctive but presently inaccessible characteristic of the defendant's appearance.

(Punctuation and footnote omitted; emphasis in original.) *Grimes v. State*, 291 Ga. 585, 590-591 (2) (662 SE2d 346) (2008). See also, *Dawson*, supra. Thus, a witness's familiarity with the defendant, in and of itself, "does not make his or her identification testimony based on a video or photograph admissible." (Footnote omitted.) *Grimes*, supra at 591 (2).

Here, there was no evidence that Detective Vansant was familiar with Alford prior to his viewing of the surveillance video or that the Alford's appearance had changed prior to trial. Although both Alford and Carter are seen with covered faces

9

in the surveillance video of the robbery, the State presented no evidence as to why Detective Vansant would be more likely to identify the defendant than the jury. Compare *Bradford v. State*, 274 Ga. App. 659, 661 (3) (618 SE2d 709) (2005) (affirming admission of lay testimony identifying defendant as the person on videotape of store robbery as the basis of his distinctive body movements). Therefore, the trial court erred in permitting Detective Vansant to identify Alford in the videotape. See *Grimes,* supra at 591-592 (2) (trial court abused its discretion in allowing a lay witness to identify defendant on surveillance photo when, despite the fact that the perpetrator in photo had covered his face, the State had presented no evidence that defendant's appearance had changed before trial and the defendant's distinctive feature – a heart tattoo – was not inaccessible to the jury). Although Detective Vansant pointed out the defendant's distinctive clothing items during the surveillance videos, such as Alford's red belt, this information regarding the defendants' clothing was introduced prior to the detective's testimony. Detective Vansant was not a witness to the crime and was not shown to be more likely to correctly identify the persons in the video than the jurors; thus, his opinion testimony was excludable upon objection. See *Mitchell v. State*, 283 Ga. App. 456, 458-459 (641 SE2d 674) (2007) (trial court abused its discretion in allowing a police officer,

10

based upon his previous acquaintance with the defendant, to identify the defendant as the person shown in the surveillance photographs).

As previously indicated however, this error was harmless. Prior to Detective Vansant's testimony, co-defendant Phillips testified, identifying Carter and Alford as his accomplices in the robbery, describing their respective roles during the robbery, and detailing the clothing worn by each before the robbery, as well as the changes made to their clothing when the robbery took place. Further, both Bridgette Smith and Cynthia Royal testified that they saw Carter and Alford near their homes shortly after the robbery and that the men discarded their clothes nearby. The police-recovered clothing matched the items worn by Alford during the surveillance video of the robbery. Additionally, Alford's cell phone records place him in the area of the robbery at the time the robbery occurred. Accordingly, the trial court's error in allowing Detective Vansant to testify as to Alford's identity on the videotape was rendered harmless in light of the overwhelming evidence of his guilt. *Rogers v. State*, 294 Ga. App. 195, 198-199 (670 SE2d 106) (2008) (the error in allowing a law enforcement official to identify the defendant as the person portrayed on surveillance video was harmless when there was additional overwhelming evidence of his guilt). Compare *Grimes,* supra (trial counsel rendered ineffective assistance of counsel for

11

failing to object to lay witness's opinion testimony that the individual in surveillance videos was defendant, and such error was not harmless when the erroneous witness testimony was the "only unequivocal testimony that [the defendant] was the person depicted in the surveillance photographs").

*Case No. A13A1933*

4. In four enumerations of error, Carter argues that the trial court erred in refusing to strike four prospective jurors for cause. Finding that the trial court erred, we reverse Carter's conviction. See *Maxwell v. State*, 282 Ga. 22, 26 (2) (d), n. 12 (644 SE2d 822) (2007) ("if a defendant is denied a full panel of qualified jurors, his conviction must be reversed") (citation omitted).

"The decision [whether] to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest abuse of that discretion." (Citation omitted.) *Abdullah v. State*, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008).

> Only upon a finding of "manifest abuse" of discretion may a trial judge's decision concerning juror qualification be reversed. But even given this latitude, the potential impact of juror bias must not be underestimated. Running through the entire fabric of our Georgia decisions is a thread which plainly indicates the broad general principle intended to be applied in every case is that each juror shall be so free

12

from either prejudice or bias as to guarantee the inviolability of an impartial trial. If error is to be committed, let it be in favor of the absolute impartiality and purity of jurors.

(Citations omitted.) *Rouse v. State*, 296 Ga. App. 330, 331-332 (674 SE2d 389) (2009).

(a) Carter contends that the trial court erred in failing to strike Juror No. 14 for cause. As to this issue, the transcript shows the following exchange between defense counsel and Juror No. 14.

**Defense Counsel**: Is there anybody here that would hold it against the

defendant . . . if he chose not to testify? . . . Anybody in here who would prefer

to hear [the defendant] testify? . . .

**Juror**: Yes, sir. I think I'd like to hear from him. . . .

**Defense Counsel**: [N]obody said they would hold it against . . . a defendant

in a criminal case. And, [Juror No. 14], you prefer to hear from a

defendant who claims they're not guilty to take the stand?

**Juror**: Yes.

**Defense Counsel**: Do you think it would affect your decision on the evidence

if you did not hear from him – if the defendant did not take the stand.

13

**Juror**: Possibly. I'd have to hear both sides.

**Defense Counsel**: You could possibly hold it against a defendant who chose not to testify?

**Juror**: I'd have to see the whole circumstances.

The defendants moved to strike Juror No. 14 for cause based on these responses, arguing that his statements indicating that he could "hold it against the defendant" if he did not testify made him an impartial juror. The State argued that the juror was ignorant of the law until instructed by the Court regarding a defendant's right not to testify, and that he never affirmatively stated that he would not follow the law as instructed by the trial court. However, Juror No. 14 never indicated that he could set aside his doubts as to a defendant's innocence if that defendant elected not to testify.

Here, we are forced to conclude that the trial court improperly failed to strike Juror No. 14 for cause. The trial court never questioned the juror and the juror never gave an affirmative response that she would be able to follow the court's instructions that the State had to prove a defendant's guilt beyond a reasonable doubt and that he had no burden to put forth proof of his innocence. See *Ham v.* State, 303 Ga. App. 232, 239-240 (2) (a) (692 SE2d 828) (2010); *Rouse*, supra at 332; *McGuire v. State*,

14

287 Ga. App. 764, 765 (1) (653 SE2d 101) (2007). Therefore, Carter is entitled to a new trial on this basis. See *Rouse*, supra at 332.[3]

(b) Based on our holding in Division 4 (a), it is unnecessary for us to consider Carter's remaining enumerations of error.

*Judgment affirmed in Case No. A13A2328 and reversed in Case No. A13A1933. Barnes, P. J., and Miller, J., concur.*

---

[3] We note that, in the companion appeal, Alford did not raise this issue as an enumeration of error in his appellate brief or in his motion for new trial, and therefore, it is waived.