294 Ga. 898
FINAL COPY

S13A1875.  CRAWFORD v. THE STATE.

HUNSTEIN, Justice.

Appellant Demarcus Crawford was convicted of felony murder, burglary, and false imprisonment in connection with a March 25, 2008 home invasion, during which victim Tedla Lemma was bound, beaten, suffocated, and left to die.  Crawford appeals the denial of his motion for new trial, challenging the sufficiency of the evidence corroborating his accomplice's testimony, the admission of a hearsay statement, and the giving of a jury instruction on the law of conspiracy.  Finding no error, we affirm.[1]

Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows.  On March 25, 2008, Gwinnett County police, dispatched to perform a welfare check at a Lilburn residence, found Tedla

_____

[1] Crawford was indicted by a Gwinnett County grand jury in May 2009 and charged with one count each of malice murder, burglary, and false imprisonment, and two counts of felony murder.  Following a jury trial held in February and March of 2012, Crawford was acquitted of malice murder but convicted on the other four counts.  Crawford was sentenced to life imprisonment for felony murder, with the other convictions merging for sentencing purposes.  A timely motion for new trial was filed on March 7, 2012, which was amended on May 7, 2013.  Following a hearing, the new trial motion was denied on June 3, 2013, and Crawford filed a notice of appeal on June 28, 2013.  The appeal was docketed to the September 2013 term of this Court and was thereafter submitted for decision on the briefs.

Lemma dead and the home in disarray. Lemma was bound with television cables and neckties and had suffered multiple injuries to his face, eyes, testicles, head, neck, and ribs, and his face was covered with an adult diaper. According to the medical examiner, the cause of his death was mechanical obstruction of the nose and mouth, combined with blunt force trauma.

State's witness Lorna Araya, who testified as part of a plea deal, was the admitted mastermind of the burglary. Araya testified at length regarding her planning and execution of several burglaries in late 2007 and early 2008, whereby she targeted fellow members of an Ethiopian community in Gwinnett County who she knew were likely to have substantial cash or other valuables. In November and December 2007, Araya testified, she staged three home invasions. The first of these, on the night of November 7, 2007, was at the Lemma home, from which Araya and her two accomplices, Quincy Jackson and Ramon Ferguson, stole approximately $50,000 in cash. The second and third burglaries were carried out by the same three individuals, as well as Marshae Brooks.

Araya further testified that, sometime in early 2008, she met Crawford[2] at

---

[2] Though Araya knew Crawford only by the name "Money Marc," evidence confirmed Crawford's use of this moniker, and Araya identified Crawford as the

a party, at which Jackson asked Araya, in Crawford's presence, about any future robberies being planned. Araya replied that she had no anticipated "moves" at that time but that when she did, she would let Jackson know. Subsequently, Jackson contacted Araya to discuss the possibility of targeting the Lemma home again, and they decided to try. A few days prior to carrying out the burglary, the two discussed their plan and determined that, rather than going at night as they had the first time, they would attempt the break-in during the day when no one was home.

On the morning of March 25, 2008, Jackson and Brooks drove to Araya's home, with Crawford accompanying them. Araya testified that she asked why Crawford was with them, and Jackson responded that Crawford needed money. Araya proceeded to drive the three men to the Lemmas' home, where she dropped off the men and drove up the street to wait. Jackson called a short time later and asked her to back the car into the Lemmas' garage, which she did. Araya remained in the Lemmas' garage keeping watch during the 35 to 45 minutes her three compatriots were loading the car with items stolen from the

person she knew as "Money Marc" in both a pre-trial lineup and at trial.

2

home. In the car afterwards, there was mention of the fact that someone had been inside the home during the burglary.

That evening, after the news media began reporting on Lemma's murder, the three men reconvened at Araya's home. According to Araya, Jackson and Brooks told her that upon entering the Lemma house, they had been startled to find someone present. They told Araya that they had tied up the man, put an adult diaper over his head, and left him that way.

In addition to Araya's testimony, the State presented cellular phone records reflecting numerous phone calls between Brooks, Jackson, Araya, and Crawford on the morning of March 25, 2008. These records also contained cell tower data that tracked Jackson's cell phone, on the morning of the crimes, as having traveled on Interstate 285 to the cell tower range encompassing Crawford's residence and then to the cell tower range encompassing Araya's home. Three calls were subsequently placed from Jackson's phone via the cell tower servicing the Lemma home between 12:50 and 12:57 p.m., and by 1:24 p.m., cell data reflected that Jackson's phone was heading away from that location and was nearing Crawford's residence at approximately 2:00 p.m.

1. In his first enumeration of error, Crawford contends that the evidence

3

is insufficient to sustain any of his convictions because they are all based on the uncorroborated testimony of Araya, an admitted accomplice. Under former OCGA § 24-4-8,

> [in] felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.[3]

Thus, in felony cases in which the State relies on the testimony of an accomplice to the crimes, in order to justify submitting the case for the jury's determination, the State must present the testimony of at least one other witness or evidence of corroborating circumstances. Hamm v. State, 294 Ga. ___ (___ SE2d ___) (2014).

The additional evidence that is required "may be circumstantial and it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged." (Citations and punctuation omitted.) Johnson v. State, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011); accord Williams v. State, 280 Ga. 584 (1) (630 SE2d 370) (2006); Selvidge v. State, 252 Ga. 243, 245 (313 SE2d 84) (1984). It must, however, be independent of the accomplice's testimony and

---

[3] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, this language is now codified at OCGA § 24-14-8.

either directly connect the defendant with the crime or justify an inference that he is guilty. Johnson, 288 Ga. at 805; Williams, 280 Ga. at 585-586. In addition, the independent evidence must corroborate both the identity of the defendant and the fact of his participation in the crime. See Kesler v. State, 249 Ga. 462 (2) (291 SE2d 497) (1982); Birt v. State, 236 Ga. 815 (225 SE2d 248) (1976). In other words, corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes. West v. State, 232 Ga. 861 (2) (209 SE2d 195) (1974). Once the State adduces such evidence, it is "peculiarly a matter for the jury to determine" whether the evidence sufficiently corroborates the accomplice's testimony and warrants a conviction. Selvidge, 252 Ga. at 245; accord Johnson, 288 Ga. at 805.

Here, the entire chronology of the planning and execution of the March 25, 2008 burglary was provided by Araya's testimony; neither Jackson, who was tried separately, nor Brooks, who pled guilty, testified at Crawford's trial. There were no eyewitness descriptions nor any physical evidence linking Crawford to the crimes. Apart from Araya's testimony, the cell phone records were the only evidence specifically implicating Crawford in the March 25, 2008 crimes.

5

Crawford argues that the phone records are by themselves insufficient to corroborate his identity and participation in the crimes, because they reflect only the fact that phone calls were made and they neither reveal the content of the conversations nor even confirm that Crawford himself, as opposed to some other person using his phone, was a party to the calls.

The phone records enabled the jury to conclude that, prior to traveling to the Lemma home on the morning of the crimes, Jackson traveled to Crawford's home and then to Araya's home and that, after the burglary, Jackson traveled back to Crawford's home. In addition, the phone records reflected a total of four phone calls between Jackson's phone number and Crawford's phone numbers between 9:47 a.m. and 11:04 a.m. on the morning of the crimes. Though we recognize that these records provided only circumstantial evidence of Crawford's participation in the crimes, we agree with the trial court's finding that this evidence was sufficient to support submission of the case to the jury for its determination. See Williams, 280 Ga. at 586 ("'[s]light evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict'"). The jury was properly instructed on the requirement that an accomplice's testimony

be corroborated and, with this instruction, was the proper arbiter of the weight the phone records should be afforded in establishing Crawford's complicity in the crimes. See Johnson, 288 Ga. at 805; Selvidge, 252 Ga. at 245. The evidence was thus sufficient to corroborate Araya's testimony under former OCGA § 24-4-8. See, e.g., Selvidge, 252 Ga. at 245 (evidence corroborating defendant's identity and participation was sufficient); Gunter v. State, 243 Ga. 651 (2) (256 SE2d 341) (1979) (same); West, 232 Ga. at 861 (same). This being the case, the evidence was also sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Crawford was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Crawford contends that the trial court erred in allowing Araya to testify that, when she asked Jackson why Crawford was joining them in the March 25, 2008 burglary, Jackson told her that Crawford "had some personal things going on and needed money." Crawford argues that this hearsay statement was improperly admitted under former OCGA § 24-3-5, which at the time provided that "the declarations by any one of the conspirators during the pendency of the

criminal project shall be admissible against all."[4]  The co-conspirator hearsay exception permits admission of the hearsay statement of a co-conspirator, made in the course of the conspiracy, so long as a prima facie case of conspiracy has been established apart from the hearsay statement itself.  See Lewis v. State, 291 Ga. 273 (3) (c) (731 SE2d 51) (2012).

Here, there was prima facie evidence, apart from Jackson's hearsay statement, of a conspiracy among Araya, Jackson, Brooks, and Crawford to burglarize the Lemma residence.  See Griffin v. State, 294 Ga. 325 (751 SE2d 773) (2013) (conspiracy consists of an agreement between two or more persons to commit a crime); Lewis, 291 Ga. at 277 (conduct revealing a common design even without proof of express agreement may establish a conspiracy). Specifically, there was evidence that Araya and Jackson discussed their plan to burglarize the Lemma residence a second time, that Crawford and Brooks joined in the execution of that plan, and that Crawford, Araya, and Brooks all communicated with Jackson by phone in the hours prior to the burglary. Jackson's hearsay statement was made as the participants assembled before

---

[4] Under the new Georgia Evidence Code, the co-conspirator hearsay exception is now codified at OCGA § 24-8-801 (d) (2) (E).

embarking for their targeted burglary site and thus was clearly made "during the pendency of the criminal project" as required under former OCGA § 24-3-5. Accordingly, the trial court did not err in admitting Jackson's hearsay statement.

3. In his final enumeration, Crawford contends that the trial court erred in instructing the jury on the law of conspiracy. Given our holding in Division 2 that there was evidence to support the finding of a conspiracy among the participants in the Lemma burglary, the trial court did not err in giving this instruction. See Hicks v. State, 287 Ga. 260 (2) (695 SE2d 195) (2010) (jury charge warranted if slight evidence supports it).

Judgment affirmed. All the Justices concur.

Decided March 28, 2014.

Murder. Gwinnett Superior Court. Before Judge Hamil.

Maryann F. Blend, for appellant.

Daniel J. Porter, District Attorney, Justin D. Unger, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,

9

for appellee.

_____