In the Supreme Court of Georgia

Decided:   June 16, 2014

S14A0441.  LINDSEY v. THE STATE.

HINES, Presiding Justice.

Lorenzo Dexter Lindsey appeals the denial of his motion for new trial, as amended, following his convictions for malice murder and criminal solicitation to commit murder in connection with the fatal shooting of Marcus Taylor.  He challenges the sufficiency of the evidence, statements by the trial court, and the admission into evidence of prior consistent statements by a witness for the prosecution.  For the reasons which follow, the challenges are unavailing, and we affirm.[1]

---

[1]The murder occurred on August 11, 2002. On August 20, 2002, a Richmond County grand jury indicted Lindsey, along with John Vincson Lawton, Jr., Charles Hernell Hankerson, and William Rodriquez Abrams for the malice murder of Marcus Taylor. Lindsey was also charged with criminal solicitation to commit murder and Lawton was additionally charged with possession of a firearm by a convicted felon during the commission of a crime. An order of nolle prosequi was entered on the charge against Abrams, and Hankerson pled guilty to a lesser offense and testified at a joint trial against Lindsey and Lawton. Lindsey and Lawton were found guilty as charged on December 19, 2003, and Lindsey was sentenced on January 21, 2004 to life imprisonment plus five years to be served consecutively.  Lawton's convictions were affirmed on appeal to this Court. *Lawton v. State*, 281 Ga. 459 (640 SE2d 14) (2007). Following the denial of his motion for new trial on March 7, 2007, Lindsey appealed to this Court, and on September 24, 2007, this Court reversed his convictions and granted him a new trial.  *Lindsey v. State*, 282 Ga. 447 (651 SE2d 66) (2007).

The evidence construed in favor of the verdicts showed the following. On August 11, 2002, Marcus Taylor was fatally shot in a Citgo store parking lot in Richmond County. Taylor had testified for the State against Lindsey at Lindsey's two trials for the drive-by shooting and resulting death of 83-year-old Rosa Barnes.[2] While incarcerated and awaiting his second trial for Barnes's murder, Lindsey began plotting with fellow inmates Lawton and Hankerson to kill Taylor, who was then also incarcerated. After the men were released from prison, the plot to kill Taylor continued. Lindsey attempted to recruit another individual, Antonio Tyler, to murder Taylor. Ultimately, Lawton agreed to kill Taylor and Lindsey gave Hankerson the murder weapon and instructed him to give it to Lawton, which he did. Hankerson was present when Lawton

Lindsey was tried before a jury January 5-9, 2009, and was found guilty of both charges. He was sentenced to life in prison for the malice murder and a consecutive five years in prison for the criminal solicitation of the murder. Trial counsel filed a motion for new trial on Lindsey's behalf on January 28, 2009, and new counsel filed an amended motion for new trial on his behalf on February 22, 2012. The motion for new trial, as amended, was denied on May 13, 2013. A notice of appeal was filed on May 28, 2013, and the case was docketed in this Court's 2014 January Term. The appeal was argued orally on March 3, 2014.

[2]Lindsey was convicted of malice murder, felony murder, aggravated assault, criminal damage to property and possession of a firearm during the commission of a crime in connection with the 1997 fatal shooting of Barnes and wounding of another individual, and his convictions were reversed on appeal to this Court. *Lindsey v. State*, 271 Ga. 657 (522 SE2d 459) (1999). Upon retrial, Lindsey was acquitted of the shooting.

approached Taylor at the Citgo store and shot him multiple times, fatally wounding Taylor in the torso and head. The murder weapon was returned to Lindsey. Lindsey gave Lawton money and drugs in payment for killing Taylor.

1. Lindsey contends that his conviction for criminal solicitation to commit murder must be reversed because the State failed to prove beyond a reasonable doubt that Richmond County was the venue of the crime. However, that is not the case.

Venue is a matter of jurisdiction, which the State must prove beyond a reasonable doubt. *Jackson v. State*, 292 Ga. 685, 688 (740 SE2d 609) (2013). To meet that burden and establish venue, the State may use both direct and circumstantial evidence. *Brinson v. State*, 289 Ga. 150, 153 (2) (709 SE2d 789) (2011), citing *Jones v. State*, 272 Ga. 900, 902–903 (2) (537 SE2d 80) (2000). And, the State did so to establish that Lindsey criminally solicited the murder of Taylor, in part, in and around the Old Savannah Road neighborhood in Richmond County.

By the time of the present trial, Hankerson had died, so his testimony from Lindsey's prior trial for the murder of Taylor was read into the record. That testimony established that Hankerson, Lawton, and Lindsey were all from the

3

Augusta area, and that consequently, they were in the same clique in prison; that it was "a home boy thing," in that "[t]he Augusta boys hang together"; the plan to kill Taylor began while the men were imprisoned and continued after their release and return home; Hankerson and Taylor, who was Hankerson's friend, were seen together at the Citgo station in Richmond County where Taylor was later fatally shot; after Lindsey learned of the encounter, he met with Hankerson on Old Savannah Road and expressed anger at Hankerson because Hankerson had not killed Taylor when he had the opportunity to do so; Lindsey told Hankerson that Hankerson "had gone soft . . . got weak," that Lindsey was "through messing with [Hankerson]," and that he did not need Hankerson anymore because he "had a real killer on his team now"; Lindsey's "real killer" was Antonio Tyler, who was present and part of this meeting to foster the plan to murder Taylor, which meeting took place on Old Savannah Road. Hankerson also testified that two days before Taylor's murder, he, Lawton, and Lindsey had a conversation "at the basketball court located right behind Bussey Glass on Old Savannah Road" at which time Lawton stated that he would kill Taylor but did not have a gun to do so; that Hankerson and Lindsey then walked to a house in the Old Savannah Road neighborhood where another man gave Lindsey the

4

pistol that ultimately was used to murder Taylor; and that Lindsey handed the pistol to Hankerson directing him to give it to Lawton because Lindsey did not want to then deal directly with Lawton as Lindsey worried that "Lawton might testify against him if any kind of slip-ups came up."

A State's witness, who at the time of the Barnes murder was an investigator with the Richmond County Sheriff's Office, testified that the address where that fatal shooting occurred was in Richmond County in an area called "Old Savannah Road." Later at trial, another investigator with the Richmond County Sheriff's Office, testified that during the course of his investigation, he met with Lawton at Lawton's home, which was two to three miles from the Old Savannah Road neighborhood and was "still in Richmond County," plainly indicating that the Old Savannah Road neighborhood was also in Richmond County.

The evidence was sufficient to prove beyond a reasonable doubt that criminal solicitation to commit murder occurred in Richmond County.

2. Lindsey contends that his convictions must be reversed because the trial court wrongfully commented on the evidence when it announced to a panel of the venire that the indicted offense of malice murder occurred in Richmond

5

County, thereby violating OCGA § 17-8-57.[3]

Certainly it is error for the court in a criminal case to indicate any opinion as to the evidence or the guilt of the accused, but that is not what happened in this instance. The comments at issue[4] were made during the trial court's preliminary instructions to the venire, in which the court made plain that it was explaining what was *alleged* in the indictment against Lindsey, not what had

---

[3]OCGA § 17-8-57 provides:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

[4]

COURT: Let me tell you a little bit about this case and then I'm going to ask you some more questions. This is a case where it's *alleged* that Mr. Lindsey back between the 10th day of June 2002 and the 13th day of July 2002, did commit the crime of criminal solicitation, more particularly with the intent that he got Antonio Tyler - - with the intent to get Mr. Tyler to commit felony murder, that Mr. Lindsey did solicit, request and attempt to cause Mr. Tyler to kill Marcus Taylor in Richmond County, Georgia.

And it's *further alleged* in count two that Mr. Lindsey did commit the crime of murder, commonly known as malice murder, for that Mr. Lindsey in Richmond County, Georgia, on the 11th day of August 2002, did unlawfully and with malice aforethought cause the death of one Marcus Taylor in Richmond County, Georgia. Now, those are generally the facts of the case.

And, [District Attorney] Wright, where did this take place in Richmond County?
DISTRICT ATTORNEY: At the Citgo gas station on the corner of Fifteenth and Martin Luther King Boulevard. It sort of divides the Sunset area from the Old Savannah Road area. (Emphasis supplied.)

6

been proven in regard to Lindsey's culpability for the crimes on trial. There was

no violation of OCGA § 17-8-57. See *Foster v. State*, 290 Ga. 599, 600–601 (2)

(723 SE2d 663) (2012); *Linson v. State*, 287 Ga. 881, 883–84 (2) (700 SE2d

394) (2010).

3. Lindsey next contends that his convictions must be reversed because the

evidence presented at trial to support the guilty verdicts was insufficient as it

rested solely on the uncorroborated testimony of the accomplice, Hankerson.

But, that is not so.

Former OCGA § 24-4-8,[5] applicable at the time of Lindsey's trial, did

require corroborating circumstances in a felony prosecution in which the only

witness was an accomplice.[6] Thus, the State had to present the testimony of at

---

[5]Former OCGA § 24-4-8 provided:

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

[6]Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, the necessity for corroboration of accomplice testimony is now codified at OCGA § 24–14–8.

7

least one other witness or evidence of such corroborating circumstances; however, the required additional evidence could be circumstantial, slight, and in and of itself, insufficient to warrant a conviction of the charged crime. *Crawford v. State*, ___ Ga. ___ (757 SE2d 102) (2014). But, such independent evidence has to either directly connect the defendant with the crime or justify an inference that the defendant is guilty; it must corroborate the identity of the defendant and that the defendant participated in the crime. Id. After the State provides such evidence, it is for the jury to determine whether the evidence sufficiently corroborates the accomplice's testimony and warrants the sought conviction. Id.

As made plain in *Crawford*, corroboration of only the chronology and details of the crimes, in and of itself, is not sufficient to satisfy the requirement of additional evidence. Id. However, there may be circumstances in which the timing and the specifics of criminal acts can serve as corroborating circumstances if they are directly linked to the identity of the defendant as the perpetrator of the crime on trial. And, even though evidence of motive without more is insufficient to corroborate the testimony of an accomplice, *Reaves v. State*, 242 Ga. 542, 543 (1) (250 SE2d 376) (1978), overruled on other grounds,

*Felker v. State*, 252 Ga. 351, 366 (2) (a) (314 SE2d 621) (1984), it can be considered in the determination of whether an accomplice's version of events inculpating a defendant is corroborated. See *Terrell v. State*, 271 Ga. 783, 786 (3) (523 SE2d 294) (1999). And, this is certainly true in the present case.

The timing and circumstances of Taylor's murder support the identity of Lindsey as the mastermind behind the crimes. Lindsey had ample motive to kill Taylor, that is, initially to prevent Taylor from again testifying at Lindsey's retrial for the murder of Rosa Barnes, and then as retribution for Taylor having twice testified against him. Indeed, an investigator in the Barnes murder case testified about Lindsey's visible animus toward Taylor during the initial trial of that case. And, perhaps even more significantly, in the present trial the State presented evidence of a separate and independent attempt to cause fear and potential harm to an anticipated witness for the prosecution.

The State's witness, who was a close friend of the victim Taylor and who had previously offered evidence in the case against Lindsey, testified that she had received threatening phone calls in an attempt to dissuade her from testifying; she had notified law enforcement because she feared for her life and

the welfare of her children. Although the witness was not permitted to give further details about the substance of the phone calls, inasmuch as Lindsey was the one on trial, a reasonable and plain inference to be drawn is that Lindsey made the calls or that they were made at his instigation. Evidence of a defendant's attempt to influence or intimidate a witness is circumstantial evidence of guilt, even in the situation in which the defendant does not personally make the attempt, that is, action by a third party to influence a witness not to testify or to testify falsely is relevant and admissible into evidence in a criminal prosecution on the issue of the defendant's guilt when the accused is shown to have authorized the attempt. *Kell v. State*, 280 Ga. 669, 671 (2) (a) (631 SE2d 679) (2006). The plain inference that Lindsey was responsible for the menacing phone calls was uncontradicted at trial. What is more, there was no objection at trial to admission of evidence of the calls on the basis that they had not been sufficiently connected to Lindsey, nor is any error in that regard enumerated in this appeal. See *Williams v. State*, 290 Ga. 533, 539 (2) (d) (722 SE2d 847) (2012) (issue of connecting defendant to threatening conduct is waived on appeal when there is failure to object in the trial court and to

10

enumerate issue on appeal).

As noted, the independent corroborating evidence need only "justify an inference that [the defendant] is guilty." *Crawford,* supra at ___. And, the jury was authorized to make the inference that Lindsey was responsible for the menacing calls, which evidenced Lindsey's intent to exact retribution against one who would aid the State in obtaining his conviction. Thus, there was evidence, albeit slight, to corroborate Hankerson's version of events identifying Lindsey as the prime mover in the plot to murder Taylor.[7]

---

[7]It should also be noted that the State introduced into evidence letters ostensibly written by Lindsey to Hankerson. The genuineness of the letters, that is, authentication of the writings, could be proved by circumstantial evidence. *Foster v. State*, 294 Ga. 383, 384-385 (3) (754 SE2d 33) (2014). During his trial testimony, Hankerson explained that he and Lindsey would communicate by letter while they were incarcerated and that they were able to circumvent the prohibition against inmates writing to each other by Lindsey putting a fictitious addressee on the letters' envelopes and then putting Hankerson's name and address, or that of another intended recipient, on the top left side of the envelope as the sender. Then when the letter could not be delivered to the fictitious addressee, the letter would be returned to the "sender," who was actually the intended recipient.

Hankerson identified the handwriting and confirmed that the letters were written to him by Lindsey; indeed, the fictitious addresses on the envelopes bore the real name of the street on which Lindsey lived. An envelope for one letter bore a handwritten message, which Hankerson testified he himself had later written. The jury was able to view and compare these handwritings. The State also tendered and elicited testimony about a different and sympathetic letter written by Hankerson to Taylor's father which letter echoed Hankerson's story. Furthermore, although the jailhouse letters to Hankerson were not actually signed by Lindsey, the substance of the letters supports the conclusion that Lindsey was, in fact, the author. The letters concerned Lindsey's efforts to force a jail informant, C.B., to recant a statement given to police, wherein C. B. stated that Lawton had confessed to killing Taylor. For example, in one such letter, the author wrote in pertinent part, "Like I said we free. C.B. said he ain't never hear Law say that s--t." In another, the author wrote, "And another thing that C.B. n_ _ _ _r he is going to do the right thing Pops (Lindsey's nickname for Hankerson). Like I told you I got my folks on it. So they let me talk to him. He said the folks came

In sum, the evidence was sufficient to enable the jury to find Lindsey guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U.S. 307(99 SCt 2781, 61 LE2d 560) (1979).

4. Finally, Lindsey contends that the trial court committed harmful error by permitting into evidence prior consistent statements made by Hankerson to law enforcement, thereby improperly bolstering Hankerson's credibility.[8] However, this complaint too is unavailing.

The record discloses that early in the trial, Lindsey acknowledged that the State wanted to admit the evidence as prior consistent statements by Hankerson, yet acquiesced to the jury hearing the content of the taped statement, and merely requested that it do so by a reading of a transcript of the statement rather than by playing the tape.[9]      Later during trial, Lindsey voiced no objection

---

to him with that s_ _t to say. He also said he don't want nothing to do with this s_ _ t . . . please please don't take no deal to testify on us." Through a simple process of elimination, the jury could conclude that Lindsey authored these letters.

[8]The statements at issue were made by Hankerson in December, 2002 and November, 2003, and there was testimony that the 2003 statement was in accord with that made in 2002. The recorded 2003 statement was admitted into evidence as State's Exhibit 47, and played for the jury.

[9]DEFENSE COUNSEL:
There's actually maybe an easier way to do the taped statement. It was transcribed. And maybe we can just read - -if the Court allows the tape recorded statement - - I think the reason why the State tried to - - well, get the Court to introduce the tape recorded statement was a prior consistent statement. I think that was the reason because this is a taped interview

12

whatsoever when the trial court stated that the tape would be played for the jury.[10]  And, at the time the State tendered the tape and asked that it be played for the jury, Lindsey's only objection was to reiterate a prior unsuccessful challenge made on confrontation grounds in a motion in limine.[11] Lindsey did not object on the basis of improper bolstering now urged, which is necessary to preserve such claim for consideration on appeal.[12]  *Jackson v. State*, 292 Ga. 685, 691 (6) (740 SE2d 609) (2013); *Bradley v. State*, 292 Ga. 607, 613 (4) (740 SE2d 100) (2013).

Judgments affirmed. All the Justices concur.

---

between Mr. Hankerson and, I think, Investigator Roundtree . . . . And Peebles.  So I'd like to look at whether we need to reintroduce a tape recorded statement.  If we have to maybe we could do it by transcript.

[10]COURT: I mean, we're going to play this thing.  It's going to take about an hour.

[11]DEFENSE COUNSEL: Your Honor, subject to the previously made objection regarding. . . his testimony, there's no further objection.

[12]Lindsey does not cite any portion of the trial transcript which reflects an objection made on the basis of bolstering, and this Court has found none. In fact, in a supplemental brief to this Court, Lindsey acknowledges that the objection made at trial may not be sufficiently "clear" in that regard.