**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2015**

# In the Court of Appeals of Georgia

A14A2028. ODLE v. THE STATE.

PHIPPS, Chief Judge.

In connection with a bank robbery, Michael Odle was tried by a jury and found guilty of three counts of armed robbery,[1] nine counts of aggravated assault,[2] nine counts of false imprisonment,[3] and two counts of possession of a firearm during the commission of a felony.[4] Odle appeals the denial of his motion for new trial, challenging the sufficiency of the evidence and the court's determination that he was not denied effective assistance of trial counsel. We affirm.

---

[1] OCGA § 16-8-41.

[2] OCGA § 16-5-21.

[3] OCGA § 16-5-41.

[4] OCGA § 16-11-106.

1. Odle contends that the evidence was insufficient to support his convictions. He asserts that "[w]ithout question, *someone* committed the offenses,"[5] but argues that the state failed to prove that he was that person. According to Odle, the state's case was based on the uncorroborated testimony of an alleged accomplice, in violation of OCGA § 24-14-8.[6]

> When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

---

[5] (Emphasis supplied.)

[6] OCGA § 24-14-8 provides: "The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason." See Ga. L. 2011, p. 99, § 101 (explaining that the provisions of Georgia's new evidence code apply to trials commencing on or after January 1, 2013). The trial in this case commenced on February 25, 2013, so the new evidence code provision (OCGA § 24-14-8) applies.

[7] *Stills v. State*, 327 Ga. App. 767, 768 (761 SE2d 159) (2014); see *Styles v. State*, 329 Ga. App. 143, 144 (1) (764 SE2d 166) (2014).

So viewed, the evidence adduced at trial included the following. L. B. testified that on September 2, 2011, she was working as a teller at a bank branch when a masked man wearing a tan cap, white tee shirt, and jeans entered the bank. The man was brandishing a handgun, and went to each teller's station. L. B. watched as the other tellers gave the man money. When the man pointed the gun at L. B., who "fear[ed] [for] her life," L. B. placed money and a tracking device in a bag and gave it to the man.

A. S. testified that she was working as a teller at the bank on the date of the robbery when, at about 10:45 a.m., she noticed a masked man standing at another teller's station. The masked man said, "hurry up or I am going to shoot," and the other teller gave the man money. The man then went to A. S.'s station, pointed a gun at her, and demanded that she put money in the bag he provided. She complied, and gave him the money. The man ordered A. S. and her customer, J. S., to get on the floor, which they did. The man then walked to other teller stations and demanded money from two more tellers.

A third teller, M. N., testified that the masked man held a gun to his face and ordered him to put money in the bag; M. N. complied and gave him the bag. The man ordered M. N. to get on the ground, and he did so.

3

A fourth teller, S. M., testified that the man approached her, ordered her to give him money and warned, "hurry or I will shoot." She put money in a bag that the man had provided, handed it to him, and got down on the floor as he had ordered "everybody" to do.

Five bank customers testified for the state. Customer L. B.[8] testified that she was conducting business at the bank when a man ordered her to get down on her knees, which she did. The man had a gun and, as customer L. B. described, "I couldn't leave with him in there." G. R. testified that a masked gunman told her to get down on the ground, and that she did not feel that she was free to leave while he was in the bank. R. L. testified that he was conducting business in the bank when a masked gunman entered, demanded money from the tellers, and told him to get on the ground. He complied. R. L. did not feel free to leave while the gunman was in the bank. H. R. testified that she and her husband (M. R.) were conducting business in the bank when a masked man wielding a gun demanded money from the tellers and then ordered people standing in the lobby, including the couple, to get on the ground. They complied. H. R. testified that she did not that she feel she was free to leave

---

[8] We refer to this witness as "customer L. B." so as to distinguish her from the teller L. B., discussed above.

4

when the gunman was in the bank, because she was afraid; when asked if her husband had felt free to leave, H. R. replied that he had "felt the same way."

J. S. testified that he was in the bank when it became quiet and a teller gestured for him to sit down. He then noticed a man wearing a face covering and holding a gun. J. S. "got kind of scared. I kind of froze."

A police officer testified that at about 10:44 a.m. on September 2, 2011 she was in her police vehicle when she was advised of an armed robbery at a bank. Based on information broadcast by police regarding the location of a tracking device, the officer turned her vehicle around and began to follow the only other vehicle in the area. She activated the police vehicle's emergency lights and siren. The vehicle being pursued accelerated, entered an office park, and stopped abruptly. The officer stopped, too, then saw a man wearing a white tank top and blue jeans jump from the passenger side of the vehicle, throw something, and run behind a building toward a wooded area. The officer lost sight of the fleeing man. The driver of the pursued vehicle, D. H., exited the vehicle and, after being ordered to do so by the officer, got on the ground; the officer then handcuffed and detained him.

Additional officers arrived, and they searched the wooded area for the man who had fled. Minutes later, an officer spotted a man running "on the other side of the

wooded area." Officers pursued him on foot through the wooded area. They found a man lying in the woods, out of breath; his leg was caught in the brush, and he had to be extricated by an officer. That man, Odle, was wearing a white tank top and blue athletic shorts. Officers found in the wooded area a pair of blue jeans and a tan cap. They found two white tee shirts, one of which was tucked inside the other, on the asphalt near D. H.'s vehicle. Officers also found on the ground near the vehicle a bag containing cash and a tracking device. Odle was arrested. Bank surveillance video, which was shown to the jury at trial, showed that the robber had worn a white tee shirt, blue jeans and a tan hat.

Odle and D. H. were jointly indicted for the crimes.[9] Before trial, D. H. entered a plea of guilty to the indictment, and agreed to testify as a witness for the prosecution in Odle's trial.

---

[9] Counts 1-3 involved the armed robbery, aggravated assault and false imprisonment of teller L. B.; Counts 4-6 involved the armed robbery, aggravated assault and false imprisonment of A. S.; Counts 7-9 involved the armed robbery, aggravated assault, and false imprisonment of S. M.; Counts 10 and 11 involved the aggravated assault and false imprisonment of customer L. B.; Counts 12 and 13 involved the aggravated assault and false imprisonment of G. R.; Counts 14 and 15 involved the aggravated assault and false imprisonment of R. L.; Counts 16 and 17 involved the aggravated assault and false imprisonment of H. R.; Counts 18 and 19 involved the aggravated assault and false imprisonment of M. R.; Counts 20 and 21 involved the aggravated assault and false imprisonment of J. S.; Counts 22 and 23 involved the firearm possession charges. None of the counts involved teller M. N.

D. H. testified at trial that he drove Odle away from the bank after the robbery; that a police vehicle made a u-turn and began following them; that during that drive, Odle removed two white tee shirts he had been wearing over a white tank top, threw a bag of money onto D. H.'s lap and, wearing a white tank top and jeans, jumped out of the vehicle and ran; and D. H. threw the bag of money out the vehicle's window. D. H. also testified that Odle had arrived at his (D. H.'s) home that morning wearing blue basketball shorts, but had changed into a pair of blue jeans during the ride to the bank; and that he and Odle had communicated by text message the morning of the robbery. The state introduced cell phone records showing that the following text message was sent from Odle's cell phone to D. H.'s cell phone at 8:42 a.m. that morning: "[W]hat's up? We still on. What?"

Citing OCGA § 24-14-8, Odle asserts that the evidence was insufficient to prove his participation in the crimes, because there was no credible evidence corroborating the testimony of the alleged accomplice. But the state did not rely solely on the testimony of the accomplice. Thus, the statute's corroboration requirement is inapplicable in this case.[10]

---

[10] See *Ross v. State*, 245 Ga. 173, 177 (5) (263 SE2d 913) (1980), citing Ga. Code Ann. § 38-121, later redesignated as OCGA § 24-4-8, then as OCGA § 24-14-8.

Notwithstanding, we point out that only slight evidence is required to corroborate an accomplice's testimony.[11] The independent corroborating evidence need only "justify an inference that [the defendant] is guilty."[12] D. H.'s testimony was corroborated in several respects, as set out above. Whether his testimony was credible and whether it was sufficiently corroborated (assuming arguendo that OCGA § 24-14-8 applied here) were issues for the jury to determine.[13]

Thus, Odle's contention is without merit.[14] The evidence presented was sufficient to authorize a rational jury to find Odle guilty of the charged crimes beyond a reasonable doubt.[15]

---

[11] *Stills*, supra at 769 (2).

[12] *Lindsey v. State*, 295 Ga. 343, 348 (760 SE2d 170) (2014).

[13] See *Styles*, supra at 149; *Carter v. State*, 326 Ga. App. 144, 145 (1) (756 SE2d 232) (2014); *Lindsey*, supra at 347 (3).

[14] See *Crawford v. State*, 294 Ga. 898, 900 (757 SE2d 102) (2014) (decided under former OCGA § 24-4-8, the precursor to OCGA § 24-14-8); *White v. State*, 315 Ga. App. 54, 61-62 (6) (726 SE2d 548) (2012).

[15] See *Carter*, supra; *Broyard v. State*, 325 Ga. App. 794 (755 SE2d 36) (2014); *Calhoun v. State*, 318 Ga. App. 835, 839 (2) (b) (734 SE2d 809) (2012); see generally *Nelson v. State*, 242 Ga. App. 63, 64 (2) (528 SE2d 844) (2000) (defendant's armed robberies of two individual bank tellers at the same site constituted two separate crimes).

2. Odle contends that the court erred by determining that he was not denied effective assistance of trial counsel. Odle asserts that trial counsel rendered ineffective assistance because he failed to object when the prosecutor elicited "hearsay testimony and speculation" from one of the bank customers (H. R.) regarding the aggravated assault and false imprisonment counts involving her husband,[16] who did not testify at trial.

> In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. Upon appellate review of that claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[17]

---

[16] Regarding M. R., the indictment alleged that Odle committed the offense of aggravated assault by assaulting M. R. with a deadly weapon, a handgun, and the offense of false imprisonment by confining and detaining him without legal authority.

[17] *Colzie v. State*, 289 Ga. 120, 124 (3) (710 SE2d 115) (2011) (citations and punctuation omitted); see *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

Odle complains about H. R.'s testimony that M. R. got on the ground when directed to do so, and that M. R. had "felt the same way" she had (i.e., not free to leave the bank when the robber was present). The testimony was not hearsay.

Under OCGA § 24-8-801 (c) (in effect at the time of the trial), "'[h]earsay' means a statement, other than one made by the declarant while under oath testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "'Statement' means (1) [a]n oral or written assertion; or (2) [n]onverbal conduct of a person, if it is intended by the person as an assertion." H. R. did not testify to any statement allegedly made by M. R. Thus, the trial court would have been correct to overrule a hearsay-based objection to the cited testimony.[18]

To the extent Odle's complaint is that counsel rendered ineffective assistance because he failed to object to testimony that was speculative, it is also without merit. Proof that a victim was placed in apprehension of immediately receiving a violent injury need not be by the victim's testimony, as it may be inferred from the conduct of the victim,[19] and the state of mind of the victim of assault may be established by

---

[18] *Smith v. State*, 284 Ga. 304, 310 (5) (667 SE2d 65) (2008).

[19] *Heard v. State*, 204 Ga. App. 757, 759 (2) (420 SE2d 639) (1992).

circumstantial evidence.[20] Odle has failed to demonstrate prejudice in regard to the testimony at issue, and his ineffective assistance of counsel claim fails.[21]

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[20] *Lewis v. State*, 215 Ga. App. 161, 163 (450 SE2d 448) (1994).

[21] See *Smith*, supra.